IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANDREW FULLMAN,**<br>**Plaintiff,**<br><br>v.<br><br>**CITY OF PHILADELPHIA, et al.,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 22-4282** |

## **MEMORANDUM OPINION**

Plaintiff Andrew Fullman alleges civil-rights violations against the City of Philadelphia ("City") and several other police and municipal defendants. Fullman claims a police officer racially harassed him by placing a parking citation on his car's windshield. He also claims that the Philadelphia Police Department and Defendant Lawrence Samuel "Larry" Krasner "conspire[ed] to prevent [him] from filing a private criminal complaint;" that Defendants retaliated against him because he was previously convicted of a crime and had previously filed police-misconduct complaints; and that Defendants violated his right to due process. And he claims Defendants should have investigated, arrested, prosecuted, and disarmed someone he alleges pointed a gun at him, and that the reason they did not is that he is Black.

All Defendants move to dismiss Fullman's Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

Fullman's primary claim seems to be that Defendants violated his rights by failing to prosecute a woman who allegedly threatened him. He is incorrect: There is no legal right to have someone else arrested or prosecuted. Fullman also claims that Defendants' actions toward him were motivated by discrimination. But while he states facts showing that Defendants acted in particular ways *and* that he has a protected characteristic, he does not state any facts showing

1

that Defendants acted as they did *because of* his protected characteristic.

For these reasons, as elaborated below, Defendants' motions will be granted and Fullman's Complaint will be dismissed.

## I. FACTUAL BACKGROUND

Fullman alleges that two incidents led to several violations of his civil rights.

First, Fullman recounts an incident outside his apartment complex. He says that after midnight on April 10, 2022, he called 911 to report a gray BMW parked in an accessible parking spot across the street. An officer, he says, arrived and placed a parking citation meant for the BMW on his car instead. He claims the officer ticketed his because of "his race, [prior] criminal conviction, [] being disabled," and status as a "corruption fighter."

Second, Fullman alleges Defendants failed to investigate, arrest, prosecute, and disarm a woman who he says pointed a gun at him.[1] Fullman claims the woman pointed a gun at him "to threaten and intimidate him" while she drank liquor and smoked marijuana. He says he called 911 to report the incident and claims that she should not be allowed to have a gun because, he says, she experiences alcohol and drug dependency and has "birth defects."

The gun incident gives rise to most of Fullman's civil-rights claims. He says that his complaints were not "properly investigated [and] prosecuted" and the gun-pointer not disarmed because he is "African-American with a criminal conviction" and because he "had a history with the Defendants." He claims they "conspir[ed] to prevent him from filing a private criminal complaint" and refused to help him because of his previous complaints and "continuous fight to get justice for his nephew/roommate," who he says was murdered in 2014. He characterizes the

---

[1] Fullman also briefly discusses an incident in which a man accidentally discharged a gun in an apartment. The accidental discharge does not seem relevant to any of Fullman's claims against Defendants.

2

complaints he filed as "protected activity" for which Defendants retaliated by denying him "due process." Fullman says he tried to get Defendants' help by filing several complaints and sending letters, but Defendants refused to arrest or prosecute the woman. He claims Defendant Krasner discriminated against him by prosecuting "similar gun crime complaints from white crime victims" but refusing to prosecute his complaint because he is Black and has a prior criminal conviction. Finally, he says that when he sought expungement of his prior conviction after he received a pardon Defendant Krasner opposed his petition in retaliation for his accusations.

Fullman expresses his allegations across three causes of action:

*First*, Defendants violated his right to due process under the Fifth and Fourteenth Amendments.[2]

*Second*, Defendants violated his right to due process and equal protection under the Fifth and Fourteenth Amendments by, because of his race, failing to investigate, arrest, prosecute, and disarm the person who he alleges pointed a gun at him; and by placing a "fraudulent" parking citation on his car.

*Third*, Defendants violated "federal civil rights laws" and 42 U.S.C. § 1983 by discriminating against him and "committing obstruction of justice" in retaliation for his complaints.

## II. LEGAL STANDARDS

A plaintiff's complaint needs to state facts that, if true, would support a plausible legal claim under existing law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ("To survive a motion to dismiss, a complaint must contain

---

[2] Because Fullman's Second Cause of Action includes the entirety of his First Cause of Action (denial of due process under the Fifth and Fourteenth Amendments), the Court will assess Fullman's Second and Third Causes of Action only.

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). The plaintiff does not need to *prove* his claims at this stage, but he does need to plead specific "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And the plaintiff must do more than merely accuse the defendant of violating a law—he must include specific facts that support his accusation. *Id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). For example, a plaintiff must do more than say a defendant racially discriminated against him—he must provide some facts that, if true, would show that the defendant's actions were in fact motivated by race.

At this stage, a complaint is considered "in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). In other words, the question is "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* Still, the court will not consider any bare legal conclusions unsupported by facts (for instance, 'Defendants discriminated against me'). Instead, it will determine whether the facts in the Complaint would state a "plausible claim for relief" under existing law if they were true. *Id.* at 210-11. And while the Complaint must state specific facts, the facts alone are not enough— those facts must support a recognized legal claim.

### III. DISCUSSION

#### A. Fullman's Civil-Rights and Discrimination Claims

##### i. *Fullman's Claims Against Defendant City of Philadelphia*

Although Fullman names the City as a Defendant, he does not make allegations supporting any claims against it. "To obtain a [civil-rights] judgment against a municipality, a plaintiff must prove that the municipality itself supported the violation of rights alleged."

4

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)[3] (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 692-95 (1978)). Fullman appears to make several civil-rights claims against various Defendants employed by the City under 42 U.S.C. § 1983, but a city itself is not responsible for its employees' civil-rights violations unless the city's policies and procedures are to blame for the employees' actions. *Id.* (citing *Monell*, 436 U.S. at 694) ("[S]ection 1983 liability attaches to a municipality only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." (quotations removed)).

Fullman does not argue that the City's policies or customs caused his injury. In fact, his Complaint alleges the opposite—that the other Defendants violated his civil rights because they did *not* follow the City's policies and procedures (*e.g.*, "The City of Philadelphia has policies in place for dangerous gun owners;" "The Philadelphia Police Department violated departmental policies [and] procedures;" "Defendants, Danielle Outlaw, King, Cunningham, and Michael Gormley, violated policies [and] procedures"). Because Fullman makes no viable claims against the City, the City will be dismissed from the suit.

### ii. Fullman's Claims Against All Other Defendants

a. Fullman's Claims Under Section 1983

Fullman proceeds under 42 U.S.C. § 1983, which lets citizens sue public officials acting under color of state law for civil-rights violations.[4] Section 1983 does not by itself create any

---

[3] *Superseded in part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072.

[4] Fullman also says this action "aris[es]" under 28 U.S.C. § 1343, 42 U.S.C. § 1981, and 42 U.S.C. § 12188. He is correct that Section 1343 gives the Court jurisdiction over civil-rights cases like this one. (So does 28 U.S.C. §1331, which gives the Court jurisdiction over any federal question, including any Constitutional claim.) Section 1981 is not jurisdictional—it creates substantive rights whose violation by state actors may be remedied under Section 1983. *McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009). (More on Section 1981 below.)
42 U.S.C. § 12188, which applies to disability discrimination in places of public accommodation and services

substantive rights, but it gives people the right to sue when officials violate their substantive rights (for instance, their right to due process under the Fourteenth Amendment). *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (plurality opinion).

To proceed under Section 1983, a plaintiff must show two things: 1) that the official he alleges violated his rights was "acting under color of state law;" and, 2) that the official violated "a right secured by the Constitution and the laws of the United States." *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). Here, all Defendants are law-enforcement officials. None disputes that, to the extent he had any interaction with Fullman, he was acting in his official capacity as a law-enforcement official, so the first Section 1983 requirement is met.

> b. Fullman's Claims Against Defendants Michael Gormley, Danielle Outlaw, Detective Charles King, and Sergeant Cunningham

"The threshold issue" for the second requirement of a Section 1983 suit "is whether the plaintiff has sufficiently alleged a deprivation of a constitutional right." *Rivas v. City of Passaic*, 365 F.3d 181, 193-94 (3d Cir. 2004). Fullman says Defendants violated his Fifth Amendment and Fourteenth Amendment rights to due process and equal protection, and his rights under "federal civil rights laws."

> 1. *Fullman's Fifth Amendment Claims*

Although Fullman mentions the Fifth Amendment right to due process, his claims do not

---

operated by private entities, does not apply on the facts Fullman alleges.

Fullman also claims that 28 U.S.C. § 1367 and 18 Pa. C.S. § 6109(e)(1)(i)(v-vii) confer jurisdiction. Section 1367 gives the Court supplemental jurisdiction over any claims that are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy." Fullman does not appear to advance any claims other than his claims under Section 1983, so Section 1367 does no work here. And 18 Pa. C.S. § 6109 is substantive, not jurisdictional. Fullman's claims under Pennsylvania state law are addressed further below.

6

implicate the Fifth Amendment. The Due Process Clause of the Fifth Amendment provides that nobody may be "deprived of life, liberty or property without due process of law." U.S. Const. amend. V. But the Fifth Amendment applies to the federal government—it does not govern state or municipal officials. *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009). Defendants are state and municipal officials, so the Fifth Amendment does not apply. Fullman's Fifth Amendment claims will, accordingly, be dismissed.

### 2. Fullman's Fourteenth Amendment Claims

The Fourteenth Amendment, though, does apply to state and municipal actors like Defendants, and Fullman brings his discrimination claims under the Fourteenth Amendment. Its Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Defendants plainly did not deprive Fullman of his life or liberty (he is alive and was never placed in custody or otherwise confined), so to the extent he is making a Fourteenth Amendment due process claim he must be claiming he was deprived of property. The question, then, is whether the law gives Fullman a property interest in what he says he was denied: the prosecution of the woman who he says pointed a gun at him.

It does not. "A private citizen does not have 'a judicially cognizable interest in the prosecution . . . of another [person].'" *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Fullman may justifiably feel harmed by the alleged gun-pointing incident, but his sense of harm does not give him the right to insist on the arrest and prosecution of another person. Such a right does not exist, in property or in any other form. Fullman's Fourteenth Amendment due process claim as to the non-prosecution of the woman who allegedly pointed a gun at him must be

dismissed.[5, 6]

Fullman also makes a Fourteenth Amendment equal protection claim. He claims that "[h]ad [he] not been African-American with a criminal conviction and not had a history with the Defendants, his gun-point complaint would have been properly investigated, prosecuted, and [the woman's] firearm would have been taken away from her along with her gun permit."

A successful claim under 42 U.S.C. § 1983 for a denial of equal protection requires that a plaintiff "prove the existence of purposeful discrimination." *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992) (citation and quotations omitted). To prove purposeful discrimination a plaintiff must "demonstrate that [he] receiv[ed] different treatment from that received by other individuals similarly situated." Under this standard, Fullman could state a claim if his complaint included facts showing specifically that Defendants Michael Gormley, Danielle Outlaw, Detective Charles King, and Sergeant Cunningham all purposefully treated him differently from other similarly situated people because of one of his protected characteristics.

Fullman argues that several of his characteristics are protected under the Fourteenth Amendment: that he is Black, that he was previously convicted of a crime, that he is a person who has filed police complaints, and that he is disabled. Race is a protected characteristic under the Fourteenth Amendment. *Washington v. Davis*, 426 U.S. 229, 239 (1976). Disability is not as

---

[5] To the extent Fullman makes a due process claim as to the parking-citation incident, that claim must also be dismissed. Due process is only implicated when a government or government agent deprives someone of life, liberty, or property. *See Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Here, Fullman does not state that the parking-citation incident deprived him of any life, liberty, or property. He does not claim he ever had to pay an improper citation. He does say that he had to go outside and investigate, but mere inconvenience does not constitute a due process violation.

[6] Fullman repeatedly cites Pa. C.S. Title 18 § 6109(e)(1)(vi-vii), which provides that "A license to carry a firearm . . . shall be issued" to an applicant unless, among other things, the applicant is "addicted to or is an unlawful user of marijuana," or the applicant is "a habitual drunkard." Though Fullman accurately cites the statute, he is incorrect that the statute gives him a right to the prosecution of anyone who possesses a firearm in violation of it. (In any case, even if it did, it is unlikely such a claim, made under Pennsylvania state law, would give rise to federal subject-matter jurisdiction.)

clearly a protected characteristic, though disabled people are still entitled to equal protection. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). But neither a previous criminal conviction nor the filing of police complaints creates Fourteenth Amendment protection.

The problem with Fullman's Complaint is that it does not state any facts showing that he was treated as he says he was *because of* one of his characteristics. Even if everything Fullman alleges were true, he states no facts suggesting that any Defendant acted with discriminatory intent, or that other similarly situated individuals were treated differently.[7] And without evidence of discriminatory intent or disparate treatment, there is no equal protection claim. *Keenan*, 983 F.2d at 465. Fullman's declarations of discrimination alone are not enough for a successful claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 225 (3d Cir. 2011) (rejecting allegations in a complaint as "conclusory . . . [and] bare statements"). So Fullman's Fourteenth Amendment equal protection claim pursuant to Section 1983 will be dismissed.[8]

### B. Motion to Dismiss by Defendant Larry Krasner (ECF No. 46)

Fullman's claim that Krasner violated his civil rights by failing to prosecute the woman who pointed a gun at him fails for the same reasons his claim against the other Defendants fails: There is no such thing as the right to have other people arrested or prosecuted, and in any case, he has not stated any facts showing that Defendant Krasner acted as he did *because of* Fullman's

---

[7] In his briefing, Fullman says Defendants "were aware of his race," but their awareness of his race does not show that they treated him in a particular way *because of* his race.

[8] Fullman also briefly suggests he is proceeding under Section 1981, which confers an equal right to "make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981. Fullman does not claim that any Defendant stopped him from contracting, suing, being party to a suit, or giving evidence. To the extent he is making a claim regarding "the full and equal benefit of all laws and proceedings," his claim fails for the same reasons that his Fourteenth Amendment claim will fail: First, Section 1981 does not entitle him to the arrest and prosecution of another person; second, he has stated no facts that indicate he did not receive the full and equal benefits of all laws *because of* his race or other characteristic. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391, (1982) ("[Section] 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").

race.

Fullman also claims that Krasner objected to his expungement petition in retaliation for his filing police complaints and this lawsuit. Retaliation is an intentional act in response to protected activity. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 168 (2005). "[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). Plaintiffs alleging retaliation must generally show that the retaliatory response was intentional and because of the plaintiff's exercise of a right. *Jackson*, 544 U.S. at 175 (Title VII); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (prisoners' rights). Here, Fullman has not stated any facts showing that Krasner opposed his expungement petition *because of* Fullman's exercise of protected conduct. He has only made a conclusory allegation, and conclusory allegations are insufficient to state a claim and sustain a complaint.

Three points further explain the Court's dismissal of Fullman's Complaint as to Krasner. First, Fullman says that Krasner is not allowed to "limit[] the number of gun cases his office chooses to prosecute," and that Krasner's decision not to prosecute someone "violat[es] the U.S. Constitution and [Fullman's] constitutional rights." Fullman is mistaken about the nature and extent of prosecutorial discretion. "[T]he decision whether or not to prosecute . . . generally rests *entirely* in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (emphasis added). Second, a private citizen "lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threated with prosecution." *Linda R.S.*, 410 U.S. at 619. So there is no claim Fullman can bring against Defendant Krasner regarding what Fullman believes to be Krasner's prosecution policies. Third, a prosecutor is

immune from suit under Section 1983 for his decision not to initiate a prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Fullman has no legal claim regarding Krasner's discretionary prosecutorial decisions.

## IV.  CONCLUSION

For these reasons, Defendants' Motions to Dismiss will be granted, and Fullman's Complaint will be dismissed with prejudice.[9]

An appropriate order follows.

BY THE COURT:

/S/WENDY BEETLESTONE, J.

_____
**WENDY BEETLESTONE, J.**

---

[9] Fullman will not be able to amend or re-submit his complaint. Plaintiff has amended his complaint twice. Further amendment is not warranted. *See e.g., USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2004) (A district court has the discretion to dismiss a complaint with prejudice where there have been "repeated failures to cure the deficiency by amendments previously allowed"); *Slater v. Yellen*, No. 23-1091, 2023 WL 6457818, at *3 (3d Cir. Oct. 4, 2023) (same); *Stovall v. Grazioli,* No. 20-2041, 2023 WL 3116439, at *3 (3d Cir. Apr. 27, 2023) (same). futile.